# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**STEVE LEE DILWORTH,**

        **Petitioner,**

    **v.**                                      **CIVIL ACTION NO. 1:08cv200**
                                                     **(Judge Keeley)**

**SHANNON MARKLE,**

        **Respondent.**

## REPORT AND RECOMMENDATION

On November 12, 2008, the petitioner, through counsel, filed a Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody.[1] On February 18, 2009, the respondent was ordered to respond to the petition.[2] On April 22, 2009, the respondent filed a response[3], along with a Motion for Summary Judgment[4] and a Memorandum[5]. On June 10, 2009, the petitioner filed a Motion for Summary Judgment[6] together with a response in opposition to the respondent's Motion for Summary Judgment.[7] On June 17, 2009, the respondent filed a reply to the

---

[1] Doc. No. 1

[2] Doc. No. 3

[3] Doc. No. 8

[4] Doc. No. 9

[5] Doc. No. 11

[6] Doc. No. 17

[7] Doc. 18

petitioner's response in opposition to the Motion for Summary Judgment[8], and on July 9, 2009, the petitioner filed a sur-reply.[9] This matter is pending before the undersigned for additional review and report and recommendation.

## I. Factual and Procedural Background

### A. PROCEEDINGS IN STATE COURT

#### 1. The Gilmer County Conviction

On July 6, 2006, a Gilmer County, West Virginia, Grand Jury indicted the petitioner on ten (10) counts of Sexual Abuse by a Parent or Guardian under West Virginia Code § 61-8D-5(a).(Doc.9-1). Following a jury trial, the petitioner was found guilty on all counts (Doc. 9-2), and on April 9, 2007, he was sentenced to a term of imprisonment of not less than ten nor more than twenty years on each conviction with Counts 1, 2 and 3 to run consecutively, and the remaining counts to run concurrently. In addition, the court ordered that the sentences on Counts 3-10 be suspended. (Doc. 9-3).

#### 2. Direct Appeal to the West Virginia Supreme Court of Appeals

On August 22, 2007, the petitioner, by counsel, filed a direct appeal of his conviction and sentence to the West Virginia Supreme Court of Appeals [hereinafter referred to as WVCSA]. (Doc. 9-4, p. 2). In the appeal, the petitioner asserted the following assignments of error:

> 1. Can a stepparent, who has not adopted a child or otherwise been granted custody rights, qualify as a "guardian" under West Virginia Code §§ 61-8D-1 and 61-8D-5(a) when the West Virginia Legislature has expressly defined such a person to be a "custodian" under §§ 61-8D-1 and 61-8D-5(a) ?

---

[8]Doc. 19

[9]Doc. 22

2. If a stepparent, who has not adopted a child or otherwise been granted custody rights, may qualify as a "guardian" under West Virginia code §§ 61-8D-1 and 61-8D-5(a), was sufficient evidence presented in this case to support Mr. Dilworth's convictions for sexual abuse by a "guardian" under § 61-8D-5(a)?

3. Whether Mr. Dilworth was denied his right to a unanimous jury verdict?

4. Whether Mr. Dilworth received a fair trial in light of the trial Court's admission into evidence of prior bad acts evidence consisting of testimony and statements relating to alleged sexual contact with D.H. in years prior to 2001?

5. Whether Mr. Dilworth's sentence of 20 to 40 years imprisonment violates the Proportionality Clause of West Virginia Constitution, Article II, § 5, where Mr. Dilworth has no prior record, has been deemed by two forensic psychiatrists to be a low risk for re-offending and the evidence establishes only commission of the offense through "sexual contact" as opposed to "sexual exploitation," "sexual intercourse," or "sexual intrusion?"

(Doc. 9-4, p. 15). The WVSCA refused the petition on January 10, 2008. (Doc. 9-4, p. 2).

## B. **Federal Habeas Petition Proceedings**

On November 12, 2008, the Petitioner filed the present petition for federal habeas relief

pursuant to 28 U.S.C. § 2254 claiming the following grounds for relief:

1. Providing the right to petition for appellate review and not the right to a full appellate review of a criminal conviction is a violation of the due process clauses of both the West Virginia and the United States Constitutions.

2. Mr. Dilworth was denied due process of law because the denial of his Petition for Appeal was arbitrary and capricious.

3. Because Defendant did not meet the legal definition of a "guardian" under West Virginia Code Sections §§ 61-8D-1 and 61-8D-5, Mr. Dilworth was convicted of crimes not charged by the grand jury or was convicted of the crimes charged without any evidence sufficient to prove an essential element of the crime, that is, that he was the "Guardian" of D.H.

4. Mr. Dilworth was denied his right to a unanimous jury verdict.

5. Mr. Dilworth did not receive a fair trial because the court permitted

admission of prior bad acts evidence.

6. Mr. Dilworth's sentence of 20-40 years imprisonment violates the Proportionality Clause of West Virginia Constitution, Article III, § 5.

## II.  Standard of Review

### A.  Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases.  See Blackledge v. Allison, 431 U.S. 63, 80 91977).  So too, has the Fourth Circuit Court of Appeals.  Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991).  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party.  Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986).  To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, 477 U.S. at 248.  It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most

favorable to the party opposing the motion.  <u>Matsushita Elec. Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986).

## B.  <u>Federal Habeas Review Under 28 U.S.C. § 2254</u>

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  "Federal habeas relief does not lie for errors of state law."  <u>Thomas v. Taylor</u>, 170 F.3d 466, 470 (4th Cir. 1999); <u>see</u>, <u>also</u>, <u>Weeks v. Angelone</u>, 176 F.3d 249, 262 (4th Cir. 1999).  Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that...the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).

The "exhaustion" doctrine requires a federal habeas petitioner to have presented all federal claims - *in federal terms* - to the highest state court prior to presenting them for federal habeas review.  <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971) (citations omitted).  This requirement ensures the State is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  <u>Id.</u>  To exhaust a claim in state court, the petitioner must "expressly raise[] that same federal constitutional claim in state court that he raises in federal court."  <u>Diaz v. Weisner</u>, 2006 U.S. Dist. LEXIS 56583, at *31 (W.D.N.C.  Aug. 1, 2006).  "It is not enough that all the facts necessary to support the federal claim were before the state court or that a somewhat similar state-claim was made."  <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982) (citations omitted).

Even if a petitioner is found to have exhausted his state remedies, the federal court may not grant habeas relief for claims adjudicated on their merits by the state court unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved in an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States;

or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830 (2001) (quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)). However, the court must still "confine [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal court may grant a habeas writ under the "unreasonable

application" clause, "if the state court identifies the correct governing legal principle from the Court's decision but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> "An unreasonable application of federal law is different from an incorrect application of federal law." <u>Id.</u> at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" <u>Tucker v. Ozmint</u>, 350 F.3d 433, 439 (4th Cir. 2003).

Habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993); <u>Richmond v. Polk</u>, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" <u>Brecht</u>, 507 U.S. at 637.

### III. <u>Analysis</u>

**A. <u>Ground One: Providing only the right to petition for appellate review, and not the right to a full appellate review of a criminal conviction, is a violation of the due process clauses of both the West Virginia and the United States Constitutions.</u>**

West Virginia Code § 58-5-1 provides as follows:

> The defendant in a criminal action **may appeal** to the Supreme Court of Appeals from a final judgment of any circuit court in which there has been a conviction or which affirms a conviction obtained in an inferior court.

(Emphasis added).

However, as noted by the petitioner, whether the petition for appeal is granted, is within the discretion of the Supreme Court of Appeals. Therefore, West Virginia does not grant a criminal defendant a first appeal of right, either statutorily or constitutionally. See Billotti v. Dodrill, 183 W.Va. 48, 394 S.E.2d 32 (W.Va. 1990). The petitioner argues that this lack of automatic appellate review violates the due process clauses of both the West Virginia and United States constitutions. In formulating this argument, the petitioner relies on an *Amicus* Brief by the Governor of West Virginia in which the Governor questions whether the lack of an appellate court in West Virginia violates Due Process. In addition, the petitioner outlines the three-part balancing test set forth by the Matthews[10] decision which the Supreme Court established to determine whether a government decision making mechanism which deprives individuals of liberty or property meets the constraints of the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution. The petitioner then contends that "West Virginia's only argument - that providing the right to full appellate review, and not just the right to petition for such review, would be financially and administratively burdensome has no merit [in light of the fact that] forty-seven of the fifty states give criminal defendants the right to full appellate review of their convictions." (Doc. 1, p. 26).[11]

The petitioner's arguments notwithstanding, his claim that the appellate process in West Virginia violates due process fails. As properly noted by the respondent, there can be no violation of a constitutional right where no such right exists, and "[i]t is well-established that a criminal

_____

[10]Matthews v. Eldridge, 424 U.S. 319 (1976).

[11]In his Opposition to Respondent's Motion for Summary Judgment, the petitioner contends that West Virginia is the only state that denies a right to appellate review on the merits. (Doc. 18, p. 5).

defendant possess no general constitutional right to appellate review. <u>Trenkler v. U.S.</u>, 536 F.3d 85, 100 (1st Cir. 2008) citing <u>McKane v. Durston</u>, 153 U.S. 684, 687 (1894); <u>Lackawanna County Dist. Att'y v. Coss</u>, 532 U.S. 394, 402 (2001); <u>See</u> <u>e.g.</u>, <u>Griffin v. Illinois</u>, 351 U.S. 12, 18 (1956) (plurality opinion) (noting that "a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all."). Furthermore, when presented with an argument that due process requires an appeal of right, with full review on the merits by the West Virginia Supreme Court of Appeals, the Fourth Circuit disagreed. "While the Supreme Court has stated on occasion that '[t]here is, of course, no constitutional right to an appeal' from a criminal conviction, we need not speak here in such broad terms. It is sufficient for purposes of this case to hold that the West Virginia procedures in question did not deprive petitioner of his rights under the due process clause." <u>Billotti v. Legursky</u>, 975 F.2d 113, 115 (4th Cir. 1992) (internal citations omitted). Accordingly, the petitioner's first ground for relief fails.

**B.  <u>Ground Two:  Mr. Dilworth was denied due process of law because the denial of his Petition for Appeal was arbitrary and capricious.</u>**

The petitioner's second claim parallels the first claim in that he is challenging the constitutionality of West Virginia's appeal process. However, here the petitioner argues that because his appeal was summarily rejected his due process rights have been violated not that his rights were violated because there is not a right to appeal. Petitioner states that the rejection of his petition for appeal was arbitrary and capricious. However, just as a state is not constitutionally mandated to provide a right to appeal, a prisoner in state custody does not have a federal constitutional right to post-conviction proceedings in state court. <u>Lackawanna</u> at 402. "[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief." <u>Bryant v. Maryland</u>, 848 F.2d 492, 493 (4th Cir. 1988). Here, the petitioner is

attacking the process by which the Supreme Court goes about accepting and denying petitions for appeal. Accordingly, it is clearly a challenge to a state court post conviction proceeding and cannot form the basis for habeas relief from this court.

**C.  Ground Three: Because Defendant did not meet the legal definition of a "guardian" under West Virginia Code Sections §§ 61-8D-1 and 61-8D-5, Mr. Dilworth was convicted of crimes not charged by the grand jury or was convicted of the crimes charged without any evidence sufficient to prove an essential element of the crime, that is, that he was the "Guardian" of D.H.**

As previously noted, the petitioner was charged and convicted of ten (10) counts of sexual abuse in violation of West Virginia Code, § 61-8D-5(a). Before the statute was amended in 2005,[12] West Virginia Code § 61-8D-5(a) (1998) stated:

> In addition to any other offense set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of a child in his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary not less that ten nor more than twenty years, or fined not less than five hundred nor more than five thousand dollars and imprisoned in the penitentiary not less than ten years nor more than twenty years.

Each count of the ten-count indictment is identical and reads as follows:

> That on or about the ___ day of _____, 2001, in Gilmer County, West Virginia, **STEVE LEE DILWORTH** committed the felony offense of **SEXUAL ABUSE BY PARENT OR GUARDIAN** in that he, the said

---

[12]

In 2005, the Legislature amended West Virginia Code § 61-8D-5(a) and added a phrase which expanded the class of individuals covered by the statute to include not only any parent, guardian or custodian but also any "other person in a position of trust in relation to the child" under his care, custody or control.

**STEVE LEE DILWORTH**, did then and there willfully, intentionally, unlawfully, knowingly and feloniously engage in or attempt to engage in sexual exploitation or, or in sexual intercourse, sexual intrusion or sexual contact with a child under his care, custody or control, and he was then the parent or guardian of the said child, to-wit: **STEVE LEE DILWORTH** did, on or about the ___ day of _____, 2001, in Gilmer County, West Virginia, willfully, unlawfully, knowingly, and feloniously, engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, D.H., a child under his care, custody or control, and he was then the guardian of the said **D.H.**, against the peace and dignity of the State of West Virginia in violation of West Virginia Code § 61-8D-5(a).

The petitioner appears to argue that because he was charged as a "guardian" and not a "custodian" the indictment is fatally flawed and a violation of due process because the essential elements of the crime charged were not set forth in the indictment, and therefore, not proven at trial. He also argues that if the indictment is not flawed there was insufficient evidence at trial to convict him for the crime with which he was charged.

**1. <u>Sufficiency of the Indictment</u>**.

The sufficiency of a state charging instrument is not a matter of federal habeas relief unless the indictment is so defective that the convicting court had no jurisdiction. <u>See</u> <u>Williams v. Collins</u>, 16 F.3d 626, 637 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994). The sufficiency of an indictment is determined by looking to the law of the state where the indictment was issued. <u>See</u> <u>Morlet</u>, 851 F.2d 1521, 1523 (5th Cir. 1988). Therefore, questions about whether an allegedly defective indictment confers jurisdiction on a state trial court are matters of state law. <u>See</u> <u>McKay v. Collins,</u> 12 F.3d 66, 69 (5th Cir. 1994) (citing <u>Lavernia v. Lynaugh</u>, 845 F.2d 493, 496 (5th Cir. 1988).

"'[Under Article III, Section 14 of the West Virginia Constitution,] [a]n indictment is sufficient when it clearly states the nature and cause of the accusation against a defendant, enabling him to prepare his defense and plead his conviction as a bar to later prosecution for the same offense.'

Syllabus Point 1, Statew v. Furner, 161 W.Va. 680, 245 S.E. 2d 618 (1978)." Syllabus Point 1, State v. Childers, 187 W.Va. 54, 415 S.E.2d 460 (1992). Additionally, "'[a]n indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based.' Syllabus Point 3, State v. Hall, 172 W.Va. 138, 304 S.E.2d 43 (1983)." Syllabus Point 2, State v. Childers, supra.

Here, all ten (10) counts of the indictment tracked the language of § 61-8D-5 and fully informed the petitioner that he was charged with the offense of sexual abuse by a guardian of child in his care, custody, or control. Accordingly, the indictment fulfills state constitutional requirements and provides no basis for federal habeas relief.

**2. Language of Indictment Effected Trial**

The petitioner additionally claims that if the indictment was not flawed the trial was prejudiced by the use of the word "guardian" in the indictment, and there was not enough evidence presented at trial for a reasonable jury to convict him under the designation of guardian. In order to fully understand the petitioner's argument in this regard, it is necessary to review the underlying facts involved in this case.

The child the petitioner was accused of sexually abusing, identified for purposes of this Report and Recommendation as D.H., is the biological daughter of Christine Dilworth. (Doc.14, p. 7). Christine Dilworth married the petitioner on October 14, 1995, at which time D.H. was seven years old. (Doc. 14-1, p. 28). At the time of the petitioner's trial in this matter, which took place on January 30th and 31st, 2007, he was still married to Christine Dilworth, although they were in the midst of divorce proceedings. (Doc. 14-1, p. 50). Therefore, during 2001, the year in which the

petitioner is alleged to have sexually abused D.H., he was her step-father.

Under West Virginia Code § 61-8D-1(4), the term custodian is defined as "a person over the age of fourteen years who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether the person has been granted custody of the child by any contract, agreement, or legal proceeding. 'Custodian' shall also include, but not be limited to, the spouse of a parent, guardian or custodian, or a person cohabiting with a parent, guardian or custodian in the relationship of husband and wife, where such spouse or other person shares actual physical possession or care and custody of a child with the parent, guardian or custodian." Therefore, it is clear that in 2001, the petitioner was a "custodian" of D.H. for purposes of § 61-8D-5, the statute under which he was indicted.

However, for reasons which are patently unclear, the Grand Jury chose to indict the petitioner as a "guardian" rather than as a "custodian." Under West Virginia Code § 61-8D-1(4), the term guardian is defined as "a person who has care and custody of a child as the result of any contract, agreement or legal proceeding." The petitioner alleges that the evidence presented at trial did not support a finding that he was D.H.'s guardian, and therefore, his conviction must be overturned.[13]

At the close of the State's case, the petitioner filed a Rule 29 motion for judgment of acquittal. (Doc. 14-1, p. 7). The basis of the motion was the petitioner's contention that the "State had produced zero evidence that [he] was the guardian of [D.H.]. Id. Following oral argument by counsel for the petitioner in support of the motion and by the prosecutor in opposition to the motion, the presiding judge denied the motion. However, in doing so, he noted:

---

[13] At no time, does the petitioner argue that the evidence was insufficient to support a finding that he sexually abused D.H.

When I was doing the charge in this case, that – this issue came up in my mind and has been very troubling to me throughout the entire proceeding. You know – And it's a close, close call. If you look to the statutory construction, statutory construction would seem to indicate that by having included in its definition of custodian a stepfather or a step-parent and not having included it in guardian, that it is the legislative intent to exclude that.

The argument can be made that an agreement – And although I think – and I'm going to tell the State I'm not going to let them argue custodian in the closing argument. They have to argue guardian. That's what they have alleged and that's what they're stuck by.

When I look to the guardian, the one thing that saves the State at this particular point in time as to a motion for judgment of acquittal is that it says who has care and custody of a child as a result of any contract, agreement, or legal proceeding....

But considering the facts and circumstances, the relationship of the parties, which we have–do have testimony there that he did have the child subject to his care, custody, and control, that there – the jury can legally infer that there may be an agreement.

(Doc. 14-1, pp. 13-14).

Following this ruling, the defense called it's one and only witness: Christine Dilworth, D.H.'s mother.[14] In answering questions presented by both the defense and prosecution, Ms. Dilworth gave testimony which went to the issue of the petitioner's status as D.M's. guardian as defined by West Virginia Code § 61-8D-1. Specifically, she testified that the petitioner agreed to look after D.H. "as a father would after a daughter." (Doc. 14-2. P. 11). She also testified that throughout their marriage, they agreed that if anything happened to her, the petitioner would take care of D.H. (Doc. 14-2, p. 16). In addition, she testified that they lived in a marriage and someone takes the child to school, and when one parent cannot do it, the other one does.(Doc. 14-2, p. 16). She also testified that "these"

---

[14]Although she was on the State's witness list, she was not called during the State's presentation of its case. (Doc. 14-1, pp. 15-17).

were activities that she expected Mr. Dilworth to do.(Doc. 14-2, p. 17). In addition, she testified that she went to Africa on a mission in July of 2001, and the petitioner agreed he would take care of D.H. in her absence. (Doc. 14-2, pp. 18, 20). Finally, Ms. Dilworth testified that in completing school forms with regard to emergency medical care, she put the petitioner's name down as D.H.'s father or guardian. (Doc. 14-2, p. 41.)

Following Ms. Dilworth's testimony, the defense rested and renewed its Rule 29 motion for a judgment of acquittal and argued that there was insufficient evidence in the record to permit the case to go to the jury on the issue of guardianship. (Doc. 14-2, p. 24). The motion was again denied, and the trial judge prefaced his ruling as follows:

> The Court, after having considered the matter – And as I indicated earlier, this is a matter of – of serious concern for the Court, and the Court is of the opinion it was a close question, at least at the close of the State's case. It's not quite as close a question considering all of the evidence in this case.
>
> The definition of guardian speaks of agreement, and it doesn't say the agreement has to be in writing.
>
> The Court is of the opinion that, based upon – considering all of the evidence, that there is a question of fact for the jury as to the issue of guardian under the statute.

(Doc. 14-2, pp. 25-26).

The standard of review in a habeas proceeding when challenging the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). A petitioner is entitled to relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S.

In arguing to this court that there is no evidence to establish that he was D.H.'s guardian

within the meaning of § 61-8D-1, the petitioner emphasizes that at no point in time did he adopt D.H. and, at no time did a court hold guardianship proceedings and conclude that he was a "guardian" of D.H. as defined by law. However, as noted by the trial court, there is nothing in Article 8D of the West Virginia Code which requires a written agreement to confer guardianship of D.H. to the petitioner. The definition of guardian in Article 8D speaks of a "contract, agreement or legal proceeding." Clearly, the testimony provided by Ms. Dilworth, who was called by the defense, provides evidence from which a rational trier of fact could find that the petitioner was D.H.'s guardian, and therefore, guilty of the crime charged. Accordingly, this ground for habeas relief also fails.

**D. Ground Four: Mr. Dilworth was denied his right to a unanimous jury verdict.**

The petitioner argues that because each count in the indictment charges a single act of sexual abuse by a guardian committed on the "____" day of " _____", 2001, the indictment provides no means by which to differentiate among various counts of the same offense and provided no means for the jury to match a specific act to a specific count. Accordingly, the petitioner maintains that it is therefore impossible to find, with any degree of certainty, that each juror agreed upon a single, discrete, identifiable act to correspond to each count beyond a reasonable doubt. Therefore, the petitioner contends that he was denied an unanimous jury verdict, and his conviction must be reversed.

In support of this argument, the petitioner relies on case law from Maryland and Tennessee, having found no West Virginia law directly on point. The state law cases cited by the petitioner are not persuasive in this § 2254 petition. However, in a case with a very similar factual history, the Sixth Circuit held that while the state was not required to include specific times and dates in an

indictment, the petitioner was deprived of his constitutional right to notice of charges by undifferentiated, carbon-copy counts and was deprived of the ability to protect himself from double jeopardy in violation of due process.  Valentine v. Konteh, 395 F.3d 626 (6th Cir. 2005).

The essential facts of the Valentine case are that the defendant was prosecuted, tried and convicted for the sexual abuse of his eight-year old stepdaughter.  The grand jury issued a forty-count indictment, charging the defendant with twenty counts of child rape and twenty counts of felonious sexual penetration of a minor.  Each rape count alleged that the defendant "unlawfully engaged in sexual conduct with the [stepdaughter] not his spouse by purposefully compelling her to submit by the use of force or threat of force, [the stepdaughter] being under the age of 13 years, to-wit: d.o.b. 11-8-87." No further information was included to differentiate one count from another.  In addition, each felonious sexual penetration count was identical, alleging that the defendant "unlawfully without privilege to do so inserted a part of the body, an instrument, apparatus or other object to-wit: finger, into the vaginal or anal cavity of another, to-wit: [the stepdaughter] not the spouse of the offender, and who was under the age of 13 years, to-wit: d.o.b. 11-18-87, by purposely compelling her to submit by force or threat of force." At the trial, the only witness to testify as to the number of assaults committed by the defendant was the victim, herself.  She testified that the defendant forced her to perform fellatio in the family living room on "about twenty" occasions, and that he digitally penetrated her vagina in the family living room on "about fifteen: occasions.  The child also testified generally as to other incidents which occurred in her bedroom, in her siblings' bedroom, and in her mother and the defendant's bedroom.  Finally, she testified that the defendant achieved anal penetration with his penis on "about ten" occasions.  The jury returned a verdict convicting the defendant of all 40 counts. Valentine at 631.

In rendering its decision, the Sixth Circuit stated that the United States Supreme Court has established the criteria by which the sufficiency of an indictment is to be measured which are: whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet ,'" and, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'" Russell v. United States, 369 U.S. 749, 763-74 (1962). Therefore, an indictment is only sufficient if it "(1)contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects against double jeopardy." Valentine at 631. Furthermore, "[w]hile the federal right to a grand jury indictment has never been found to be incorporated against the states, courts have found that the due process rights enunciated in Russell are required not only in federal indictments but also in state criminal charges. Id. (Citations omitted).

The Court then noted that while the indictment complied with the first prong of Russell by adequately setting out the elements of the charged offense, "the multiple, undifferentiated charges in the indictment violated [the defendant's] rights to notice and his right to be protected from double jeopardy." Id. at 632.

Just as in Valentine, the indictment and evidence at trial in the instant case failed to advise the petitioner of what occurrences formed the basis of the criminal charges he faced. The petitioner, like Valentine, "was prosecuted for a generic pattern of abuse rather than [ten] separate abusive incidents. States have the authority to enact criminal statutes regarding a 'pattern' or a 'continuing course' of abuse. They do not have the power to prosecute one for a pattern of abuse through simply charging a defendant with the same basic offense many times over." Valentine at 634. The due

process problems in the petitioner's indictment might have been corrected had the prosecution delineated the factual basis for the ten different incidents either before or during trial. However, because the prosecution did not differentiate, the petitioner had legal and actual notice that he must defend against D.H.'s allegations of sexual abuse over a one year period, [15] but he was given no notice of the multiple incidents for which he was tried and convicted. Therefore, the petitioner could only successfully defend against some of the charges by effectively defending against all of the charges.

In addition, "[d]ue process also requires that criminal charges provide criminal defendants with the ability to protect themselves from double jeopardy." Valentine at 636. Again, as in Valentine, the indictment in this case presents two double jeopardy issues. First, there is insufficient specificity in the indictment or in the trial record to permit the petitioner to plead convictions as a bar to future prosecutions.[16] Second, the carbon-copy counts of the indictment introduce the distinct possibility that the petitioner was subjected to double jeopardy at his trial by being punished multiple times for what may have been the same offense.

The undersigned stresses, as did the opinion in Valentine, that the constitutional error in this case is not tied to the generic language of the indictment but to the fact that there was no differentiation among the counts. Numerous courts have recognized that the difficulties presented by child sexual abuse cases require considerable latitude in the drafting of criminal charges. "The

[15] The undersigned notes that, in fact, the indictment is not even clear that it was a one-year period because no month is stated. Only the year, 2001, is set forth in the indictment.

[16] "It is immaterial that [the petitioner] faces no current risk of being tried a second time. Courts in habeas proceedings must ensure prisoners were afforded proper constitutional protections during their state criminal proceedings." Valentine at 637.

prosecutors in this case, however, abused this wide latitude by piling on multiple identical counts. Numerous charges cannot be made out through estimation or inference.[17] Instead, if prosecutors seek multiple charges against a defendant, they must link those multiple charges to multiple identifiable offenses." Valentine at 637.

However, the deficient charging by the prosecution and its failure to elicit testimony from which the jury could reasonably identify ten separate instances of sexual abuse by the petitioner, does not negate the guilty verdict of count 1. "The jury heard the witnesses, evaluated the evidence, and obviously was convinced of the petitioner's guilt. Had this case been tried on one count, the conviction would stand. Therefore, any constitutional error to the other [9] counts should not render invalid [the first count]." Valentine at 637 citing Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (finding that when federal courts collaterally review convictions, trial errors are harmless unless they "had a substantial and injurious effect or influence in determining the jury's verdict."). Again, as in Valentine, "[t]he constitutional errors in this case lie in the multiple identical counts rather than the generic statutory language of the charges...." Valentine at 637. The petitioner has made no attempt to show that the identical language of the counts made an impact of the jury's consideration of Count 1. Therefore, issuance of an unconditional writ of habeas corpus would be inappropriate.

---

17

Although D.H. testified with some specificity to incidents of sexual abuse by the petitioner, that testimony involved incidents prior to 2001, the year contained in the indictment. Specifically, she described an incident in October of 1999, an incident in November of 1999,an incident in February of 2000, and incident in May 2000, an incident during the fall of 2000, and finally, one that occurred between Christmas 2000, and the first of the year. (Doc. 14, pp. 32-43). The only specific incident in 2001 about which D.H. testified was one that occurred before Thanksgiving. (Doc. 14, pp. 43-44). Beyond the one specific incident in 2001, D.H. testified that she could not say exactly how many times the petitioner came into her room in 2001, other than to say that it happened "at least 20, maybe 30." (Doc. 14, pp. 13-14).

Accordingly, the undersigned recommends only that the writ be granted as to Counts 2 through 10 of the indictment, and his conviction on those grounds be vacated.

**E.  Ground Five: Whether Mr. Dilworth received a fair trial in light of the trial Court's admission into evidence of prior bad acts evidence consisting of testimony and statements relating to alleged sexual contact with D.H. in years prior to 2001.**

The petitioner argues that the admission of uncharged acts against him in trial unfairly prejudiced him and applies Rule 404(b) of the West Virginia Rules of Evidence to his argument.  The specific evidence that the petitioner challenges is both the "transcript" of a statement given by him to the state police on May 23, 2006 and D.H.'s testimony regarding alleged acts of sexual abuse against her by the petitioner prior to 2001.

A review of the trial transcript, establishes that, Robert Smith, a trooper with the West Virginia State Police, responded to a domestic incident at the petitioner's home on May 23, 2006. Upon a general inquiry as to "[w]hat's going on here?", the petitioner responded that an argument had occurred because his wife had found that he had been sexually touching his [step]daughter. (Doc. 13-3, p. 29).  Trooper Smith then stopped his questions and advised the petitioner of his Miranda rights.  Trooper Smith then took the petitioner to his cruiser and began a question and answer session that was recorded on the vehicles in-car camera.  In addition the videotape of the interview, Trooper Smith also took handwritten notes of the questions asked and  the answers received.  Trooper Smith testified he then reviewed his written notes of the questions and answers with the petitioner and had him sign each page.  At trial, both the videotape and Trooper Smith's written summary or "transcript" were offered as evidence. In an *in camera* proceeding, the petitioner objected to the admission of Trooper Smith's handwritten "transcript" arguing that inconsistencies between the "transcript" and the videotape would be misleading.  Therefore the petitioner moved that it be excluded under Rule

403[18] of the West Virginia Rules of Evidence. (Doc. 13-3. pp. 20-21).  The court found that the statement was inadmissible.  The court then noted that "[a]s to any inconsistencies as to – between this statement taken by the officer and the tape, counsel can raise that on cross-examination of this witness and make such argument as he deems appropriate to the jury, but that it goes to the weight and the – of the statement and not to the admissibility of the statement." (Doc. 13-3, p. 25). With respect the D.H.'s testimony at trial regarding her allegations of sexual abuse by the petitioner prior to 2001, the relevant year for purposes of the indictment, the trial transcript indicates that no objection was made to said testimony.  Furthermore, on cross-examination, the petitioner's counsel specifically elicited testimony to demonstrate that the particular events that she recalled had occurred prior to 2001.

Nothing in the record indicates that the petitioner ever raised an objection under Rule 404(b). Accordingly, the petitioner may have waived any claim under Rule 404(b).

> Syllabus point 2 of State ex rel. Cooper v. Caperton, 196 W.Va. 208,
> 470 S.E. 2d 162 (1966), holds: 'To preserve an issue for appellate review
> a party must articulate it with such sufficient distinctiveness to alert a circuit
> court to the nature of the claimed defect.' Syl. pt. 10, State v. Shrewsbury,
> 213 W.Va. 327, 582 S.E.2d 774 (2003); Syl. pt. 1, Miller v Triplett,
> 203 W.Va. 351, 507 S.E.2d 714 (1988); syl. Py. 2, State v. Craft, 200 W.Va
> 496, 490 S.E.2d 315, 490 S.E.2d 315 (1997).  See also, syl. Pt. 6,
> In re Michael Ray T., 206 W.Va. 434, , 525 S.E.2d 315 (1999), stating
> that '[t'he responsibility and burden of designating the record is on the
> parties, and appellate review must be limited to those issues which appear
> in the record presented to this Court.'
>
> Consequently, inasmuch as the issue no asserted by the appellant... was
> not raised below or made a part of the record before the Circuit Court, it

---

[18]"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

is not properly before this Court and is, accordingly without merit.

State v. Jason H., 599 S.E.2d 862, 866 (W.Va. 2004). Although the WVSCA denied the petition for appeal in this matter, it would appear that 401(b) issues could not have been addressed by that Court if full review had been granted. Any claim that is barred from review by an independent and adequate state law ground cannot be reviewed in federal habeas corpus. Coleman v. Thompson, 501 U.S. 722, 754 (1991). Accordingly, it is reasonable to conclude that this court is barred from addressing the issue.

However, even if the issue were properly before the court, the petitioner has failed to state a claim for federal habeas relief. State court evidentiary rulings do not rise to the level of due process violations unless they "offend...some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Patterson v. New York, 432 U.S. 197, 202 (1977) (citations omitted). The Fourth Circuit as restated the standards for rasing a federal issue resulting from an evidentiary ruling as follows:

> Importantly, in considering federal habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the admissibility of evidence under state law unless erroneous rulings were so extreme as to result in a denial of a constitutionally fair proceeding.' Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000). 'It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented.' Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993) (Internal quotations marks omitted); see also Estelle v. McGuire, 502 U.S. 62, 68 (1991) (explaining that, '[i]n conducting habeas review, a federal Court is limited to deciding whether a conviction violated the constitution, laws, or treaties of the United States').

Barbe v. McBride, 521 F.3d 443, 452 (4th Cir. 2008)

Therefore, the petitioner must show that admission of the challenged evidence "is so extremely unfair that its admission violates fundamental conceptions of 'justice' in order to

demonstrate a violation of due process. <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990).

Clearly, the petitioner has failed to meet this burden. Although he raises the argument that the

challenged evidence contains admissions by the petitioner that he touched the breasts and buttocks

of D.H. more than ten times between July 1998 and July 2000, this evidence was at 'at least

circumstantially valuable in proving petitioner's guilt' and not a violation of due process." <u>Dowling</u>,

<u>supra</u> at 353.

Furthermore,

> [t]he issue of whether an admission of uncharged crimes can ever
> constitute a violation of the Due Process Clause has not been decided
> by the Supreme Court. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 75 n.5 (1991)
> [W]e express no opinion on whether a state law would violate the Due Process
> Clause if it permitted the use of 'prior crimes' evidence to show propensity
> to commit a charged crime.")....Consequently, I cannot find a due process
> violation because to do would amount to the creation of a new rule of
> constitutional law, which a federal court is not permitted to do in a habeas
> corpus proceeding. <u>See</u> <u>Teague v. Lane</u>, 489 U.S. 288, 316 (1989).

<u>Jones v. Conway</u>, 442 F.Supp. 2d 113, 131 (S.D.N.Y. 2006).

Accordingly, the petitioner's "404(b)" challenge is not appropriate for this court's review and

should be dismissed.

## F. Ground Six: Mr. Dilworth's sentence of 20-40 years imprisonment violates the Proportionality Clause of West Virginia Constitution, Article III, § 5.

In his final ground for relief, the petitioner argues his sentence of 20 to 40 years,[19] under the

facts and circumstances of this case, is grossly disproportionate to the crimes committed and shocks

the conscience in deprivation of his rights under West Virginia's Constitution, Article III, § 5, which

provides that, "Penalties shall be proportionated to the character and degree of the offense. "(Doc.

---

[19]As noted previously in this Report and Recommendation, the trial court ordered the 10-20 year sentences on Counts 1 and 2 to sun consecutively, thereby amounting to a sentence of 20 to 40 years.

1-2, p. 58). Citing Wes Virginia law, the petitioner maintains that the court must undertake a two-part test to determine whether a sentence, even though it is within the prescribed maximum penalties enacted by the legislature, remains so disproportionate that it violates the West Virginia Constitution. The first test is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. West Virginia v. Cooper, 304 S.E.2d 266, 272 (W.Va. 1983). When it cannot be said that a particular sentence shocks the conscience, a disproportionality challenge is guided by the second, objective test, which considers "the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction. Id. (citing syllabus pt. 5 of Warnstreet v. Bordenkircher, 276 S.E.2d 205 (W.Va. 1981)).

First, the undersigned notes that the petitioner has alleged no federal law in support of this claim for relief. This is perhaps because "[a] state court's sentencing decision and claims arising out of that decision are generally not constitutionally cognizable, unless the sentencing decision exceeds the statutory limits or is wholly unauthorized by law." Laboy v. Carroll, 437 F.Supp.2d 260, 263 (D. Delaware 2006) citing Bozza v. United States, 330 U.S. 160, 166 (1947). Furthermore, a sentence imposed within statutory limits is not generally subject to habeas review. See Townsend v. Burke, 334 U.S. 736, 741 (1948). Here, the petitioner was sentenced within the statutory limits, and the statute under which the petitioner was sentenced, has not been held to be unconstitutional.

In addition to failing to assert a valid challenge to state law, the petitioner argument also fails to state a valid challenge under the Eighth Amendment as to the proportionality of his sentence. The Eighth Amendment, which applies to the states through the Fourteenth Amendment, Furman v. Georgia, 408 U.S. 238 (1972), provides that "[e]xcessive bail shall not be required, nor excessive

fines imposed, nor cruel and unusual punishments inflicted." "The final clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." Solem v. Helm, 463 U.S. 277, 284 (1983) "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences has been exceedingly rare." Rummel v. Estelle, 445 U.S. 263, 272 (1980) (life in prison with the possibility of parole for a three time offender whose crimes involved "the fraudulent use of a credit card to obtain $80 worth of goods or services," "passing a forged check in the amount of $28.36" and "obtaining $120.75 by false pretenses" did not violate the Eighth Amendment).

In Solem v. Helm, 463 U.S. 277 (1983), the Supreme Court found that a sentence of life in prison without the possibility of a parole for a seventh nonviolent felony violated the Eighth Amendment). The Supreme Court noted that the Eighth Amendment "prohibits . . . sentences that are disproportionate to the crime committed." Id. at 284. The Supreme Court explained that the following three factors may be relevant to determine whether a sentence is so disproportionate that is violates the Eighth Amendment: (i) the gravity of the offense and the harshness of the penalty;  (ii) the sentences imposed on other criminals in the same jurisdiction;  and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Id. at 292. The Supreme Court did not overrule Rummel. The Court stated that "Rummel did reject a proportionality challenge to a particular sentence. But since the Rummel Court--like the dissent today--offered no standards for determining when an Eighth Amendment violation has occurred, it is controlling only in a similar factual situation. Here the facts are clearly distinguishable. Whereas Rummel was eligible for a reasonably early parole, Helm, at age 36, was sentenced to life with no possibility of parole." Id. at 303, n. 32.

Years later, in <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991), the Supreme Court again addressed the proportionality issue in a case involving a defendant who had no prior felony convictions and was convicted of possession of 672 grams of cocaine. The Supreme Court determined that the defendant's mandatory life sentence without the possibility of parole did not violate the Eighth Amendment. However, the justices disagreed on why the sentence did not violate the Eighth Amendment. Justice Scalia joined by The Chief Justice found that " the proportionality principle was "an aspect of our death penalty jurisprudence, rather than a generalizable aspect of Eighth Amendment law." <u>Id.</u> at 994. Thus, he would have declined to apply gross disproportionality principles except in reviewing capital sentences. <u>Id.</u> However, Justice Kennedy joined by Justice O'Connor and Justice Souter recognized that "[t]he Eighth Amendment proportionality principle also applies to noncapital sentences." <u>Id.</u> at 997. They determined that the following principles should be examined to determine whether an Eighth Amendment violation had occurred: "the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors--inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." <u>Id.</u> at 1001. Justice Kennedy also found that <u>Solem</u> did not require a comparative analysis "within and between jurisdictions." <u>Id.</u> at 1004-1005. Instead, Justice Kennedy stated "that intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." <u>Id.</u> at 1005.

In <u>Ewing v. California</u>, 538 U.S. 11 (2003), the Supreme Court applied the proportionality

principles expounded by Justice Kennedy to a non-capital sentence, and affirmed a sentence of 25 years to life under California's three strikes law for the defendant who had been convicted of felony grand theft for stealing golf clubs valued at $1200.00.  In Ewing, Justice O'Conner adopted Justice Kennedy's concurrence in Harmelin and found that because Ewing had been previously convicted of four felonies (first degree robbery and three residential burglaries) his sentence was not grossly disproportionate and did not violate the Eighth Amendment.  Justice O'Connor stated that the Eighth Amendment does not prevent the California legislature from deciding that protecting the public requires incarcerating individuals who have been convicted of at least one serious or violent crime.

The same day that the Supreme Court decided Ewing, it also decided Lockyer v. Andrade, 538 U.S. 63 (2003), a §2254 case involving California's three strike law.  Andrade stole $150.00 worth of videotapes from two different stores. He was convicted of two felony counts of petty theft with a prior conviction.  As a result of his prior criminal history, he was sentenced to two consecutive terms of 25 years to life in prison. The California Court of Appeals affirmed Andrade's sentence of two consecutive terms of 25 years to life in prison and found that such sentence did not violate the Eighth Amendment.  In Andrade, the Supreme Court recognized that its "precedents in this area have not been a model of clarity" and that "[its] cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality."  Id. at 72.  Thus, the Supreme Court determined that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."  Id.  The Supreme Court determined that the state court's decision was not contrary to or an unreasonable application of Supreme Court law.

Although very harsh, the petitioner's sentence is not an "extraordinary case" in light of the Supreme Court's history with respect to review of state sentences. Furthermore, it is pertinent to note that under Fourth Circuit precedent, "outside the context of a capital sentence, a proportionality review is necessary only with respect to sentences of life imprisonment without the possibility of parole. Beverati v. Smith, 120 F.3d 500, 504-05 (4th Cir. 1997). Therefore, this final claim by the petitioner fails to state a claim for habeas relief.

## IV. Recommendation

For the foregoing reasons, it hereby RECOMMENDED that the respondent's Motion for Summary Judgment (Doc. 9) be **GRANTED IN PART AND DENIED IN PART**, the petitioner's Motion for Summary Judgment (Doc. 17) be **GRANTED IN PART AND DENIED IN PART** and the Petition for Writ of Habeas Corpus (Doc No. 1) be **GRANTED ONLY** as to GROUND 4 as discussed on pages 16-21 of this Recommendation.

Within ten (10) days after being served with a copy of this Recommendation, any party may filed with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgement of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the

United States District Court for the Northern District of West Virginia.

Dated: September 2, 2009.

 /s James E. Seibert                            
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE