IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

STEVE LEE DILWORTH,

        Petitioner,

v.                                                                                                                            Civ. No. 1:08-cv-200

DAVID BALLARD, Warden,[1]

        Respondent.

## REPORT & RECOMMENDATION

### *I. INTRODUCTION*

In 2006, Petitioner went to trial in Gilmer County, West Virginia, on a ten count indictment charging him with sexual contact with his stepdaughter on ten separate occasions in 2001. After hearing the evidence, which included testimony from the victim, her boyfriend, and the police officer that interviewed her, as well as a tape recorded and signed statement by Petitioner, the jury found him guilty on all counts. He was sentenced to not less than ten, nor more than twenty years on each count, with counts one through three running consecutive to each other and the rest running concurrent with the consecutive sentences. The sentence for count three was suspended placing the total penitentiary time at twenty to forty years. An appeal to the West Virginia Supreme Court of Appeals was taken, but that Court denied review.

On November 12, 2008, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After a preliminary review, the undersigned issued an Order to Show Cause as to why the writ should not be granted, which Respondent did by filing a motion for summary judgment. Petitioner then filed his motion for summary judgment. After responses and replies were lodged by the respective

---

[1] Pursuant to Federal Rule of Civil Procedure 25(a), which provides that a public officer's successor is automatically substituted as a party, Warden Ballard is hereby named Respondent.

1

parties, the undersigned issued a report and recommendation that Respondent's motion for summary judgment be granted on five of the six grounds contained in the writ. However, the undersigned found some issues with the notice provided by the indictment in this case, and the possibility of placing Petitioner at risk for double jeopardy in the future, and recommended that Petitioner's motion for summary judgment be granted in part as to ground four, which alleged that Petitioner did not receive a unanimous verdict. In short, the recommendation was that the conviction on only one count in the indictment should stand.

After objections were lodged to the report and recommendation, the Honorable Irene Keely adopted the portions of the recommendation that the writ be denied, but found that the federal constitutional question inherent in ground four was not fairly presented to the state's highest court as to give it the opportunity to pass on the federal constitutional issue raised. As such, Judge Keely held ruling on ground four in abeyance, stayed the case, and gave Petitioner an opportunity to raise the federal question to the state. Petitioner did so by filing a state habeas petition. The state habeas court agreed with the reasoning of the undersigned in the report and recommendation and entered an order that the conviction on nine of the ten counts in the indictment be set aside. Respondent appealed to the West Virginia Supreme Court, which, by written decision, reversed the lower court and reinstated the original sentence. In doing so, West Virginia's highest court squarely addressed the federal constitutional concerns. Following this ruling, the undersigned entered an order reinstating the case to this Court's active docket and directing Respondent to file a response to the remaining Ground Four claim. Respondent filed this response and Petitioner has replied. The remaining ground is now ripe for this Court's review.

## *II. STANDARD OF REVIEW*

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. R. CIV.

P. 56(c)(2); *United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In viewing the motion for summary judgment, the Court must do so under the constraints imposed by the habeas statue. Under § 2254, this Court may not grant federal habeas relief unless it concludes that West Virginia's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362 (2000). A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 405. A state court decision "involves an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), if the state court decision "identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412. An objectively "unreasonable application of federal law is different from an incorrect or erroneous application of federal law." *Id.* Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable" for habeas relief to be granted. *Id.* at 411.

As these principles make clear, § 2254(d) imposes a powerful limit on the relitigation of claims that have already been rejected by state courts:

> [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

*Harrington v. Richter*, 131 S.Ct. 770, 786–87 (2011). A habeas petitioner proceeding under § 2254 bears the burden of showing that he is entitled to habeas relief under this highly deferential standard.

Finally, determinations of factual issues by the state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This standard "reflects Congress's view that there is no reason for a do-over in federal court when it comes to facts already resolved by state tribunals." *Id.* Accordingly, courts should not "casually cast aside a state court's factual findings. *Id*

## III. DISCUSSION

The only ground still at issue in this petition is Ground Four, which alleges that Petitioner "was denied his right to a unanimous jury verdict." In his most recent response, Respondent urges the Court to deny the petition because the West Virginia Supreme Court did not unreasonably apply clearly established United States Supreme Court precedent in denying habeas relief. For the following reasons,

the Court finds that the instant habeas petition must be denied.[2]

**A. Procedural Default**

Respondent has not argued in his supplemental response that the claim is procedurally defaulted, but it was raised in his motion for summary judgment. (CM/ECF Doc. 11, pp. 19–22). However, even if Respondent did not raise procedural default as a grounds for denial of the petition, if a claim is procedurally defaulted then "concerns of comity and federalism counsel in favor of a federal habeas court declining to reach the merits of the federal claim." *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999) (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)); *see also Granberry v. Greer*, 481 U.S. 129 (1987). The West Virginia Supreme Court found that Ground Four was waived for failing to comply with state law.

The United States Supreme Court has made clear that a federal district court reviewing a habeas petition filed by a state prisoner should not disturb the state's custody of that prisoner if the judgment is based on an independent and adequate state ground. *See Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). In describing the principles behind the independent and adequate state ground doctrine in the habeas context, the Supreme Court noted:

> the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* The doctrine runs akin to the exhaustion requirement in the habeas statute because "a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Id.* at 732. Thus, "there

---

[2] The undersigned recognizes that this is an about face from the recommendation made nearly four years ago, but after mature reflection on the law and the standard of review, and now with the benefit of a written decision by the state's highest court, the undersigned is confident that no relief can be granted.

5

are no state remedies any longer 'available'" to a habeas petitioner. *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125-126, n. 28 (1982)).

In discussing one of the reasons for denying Petitioner's state habeas, the West Virginia Supreme Court explained,

> Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure provides that [d]efenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings) must be raised prior to trial. Rule 12(f) provides that the [f]ailure by a party to raise defenses or objection or to make request which must be made prior to trial . . . may constitute waiver thereof, but the court for cause shown should grant relief from the waiver.

*Ballard v. Dilworth*, 739 S.E.2d 643, 652 n.28 (W. Va.. 2013) (internal quotations omitted). The court went on to find that Petitioner's challenge to the indictment was not jurisdictional, nor was the indictment so defective that it failed to charge a crime under West Virginia law. *Id.* Further, the state court found that Petitioner had not shown good cause for failing to timely raise the issue as required by the state procedural rules. *Id.* Thus, Petitioner "was not entitled to habeas relief because he waived the issue of alleged infirmities in the indictment by failing to follow [state] law in timely raising the issue prior to trial." *Id.*

Based on the foregoing, the Court finds that the state clearly and expressly stated, *see Michigan v. Long*, 463 U.S. 1032 (1983), an independent and adequate ground for denying habeas relief. It is of no consequence that the state also addressed the merits of Petitioner's claim. As the United States Supreme Court has explained,

> a state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. Thus, by applying this doctrine to habeas cases, *Sykes* curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach

> a federal question without sacrificing its interests in finality, federalism, and comity.

*Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (internal citation omitted). Because there is an adequate and independent finding by the state court that Petitioner procedurally defaulted his challenge to the indictment, he would have to show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Petitioner has failed to show cause for the default. Although he contends that he raised the issue in his motion for acquittal at the close of the state's case, a review of the transcript shows a challenge to the state's evidence presented to establish that Petitioner was the "guardian" as charged in the indictment. Moreover, West Virginia Rule of Criminal Procedure 12(f) expressly states that the challenge to an indictment must be made *before* trial to avoid waiving any objections on appeal. Petitioner has also not made any allegations that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Further, the Court can find no actual prejudice or a fundamental miscarriage of justice resulting from any defect in the indictment. Included in the evidence presented at trial was the testimony of the victim, who testified as follows:

> Q: And tell us about the year 2001 and any activities of sexual abuse by [Petitioner] upon you.
>
> A: [Petitioner] would come into my bedroom in Coxs Mill, and it was usually always in the early morning . . . he would lay behind me and just start to, like, rub my back and stuff underneath of my shirt or pajamas, and that would turn to, like, breast fondling, and he would rub his penis on my butt area, and then sometimes he would lick or suck on my breasts, and he'd pull down my pants sometimes and, like, just, you know, spread my legs and look in my vaginal area.
> . . .
>
> Q: Can you say exactly how many times he [Petitioner] came in your

7

room in 2001?

A: No, I can't.

Q: Would you be able to truthfully tell this jury it was more than once?

A: (Nodded.) Yes.

Q: Was it as many as ten times?

A: (Nodded.) Yes.

Q: Was it at least ten times?

A: Yes. (Crying.)

. . .

Q: So between January 1, 2001, when you're 12 and your last clearly recollected . . . out of the ten is in November 2001. Between January 2001 and November 2001, did [Petitioner] early in the morning come into your bedroom and touch you sexually?

A: Yes.

Q: More than once?

A: Yes.

Q: At least ten times?

A: Yes. (Crying.)

Q. Can you recollect the exact date? Did you mark them on a calendar?

A. (Shook head.) No.

Q. Was it the routine in the household for . . . [Petitioner], to come in and help you get started for school, to get dressed, or to get ready?

A. He would wake me up.

. . .

Q. In the year 2001, did [Petitioner] (indicated) wake you up ten times

>sexually?
>
>A. Yes.

The state then introduced the video recorded interview of Petitioner in the back of the police car the night he was arrested. Although not visible in the video, the following conversation was heard by the jury:

>Q: Where did you touch her [the victim]?
>
>A: I touch [sic] her a* *, and I then touch [sic] her boobs about five years ago. It started by cuddling, then I touched her boobs, I knew I was wrong.
>. . .
>
>Q: Approximately, how many time [sic] would you say you touch [sic] her breast or butt?
>
>A: I do not known [sic].
>
>Q: Where would this take place in the house?
>
>A: Usually in her room.
>
>Q: How would it started [sic]?
>
>A: It didn't start out sexually. I wasn't trying to get fu* *ed, it was loving. I fu* *ed up years ago . . . You can't take back what you did.
>. . .
>
>Q: When you touched her breast, how would you touch them?
>
>A: Just rub them.
>
>Q: How about her butt?
>
>A: Just rub on it.
>
>Q: Did you become sexually arouse [sic]?
>
>A: Yes.
>
>. . .
>
>Q: Can you recall the first incident?

> A: No.
>
> Q: Do you know the year?
>
> A: No.
>
> Q: How about the season?
>
> A: No.
>
> ...
>
> Q: Would you say you touched her breast or butt more than ten times [sic]?
>
> A: Yes
>
> Q: How about twenty time [sic]?
>
> A: I don't know. Once is bad enough.
>
> Q: Did the touching happen often?
>
> A: I don't remember.
>
> Q: Over how many years did this occurr [sic]?
>
> A: Many year [sic]. I do not remember individivul [sic] times, if I could I could count them.

Thus, the jury had evidence to support its decision as to each count of the ten count indictment. Further, the trial judge specifically addressed the jury after the close of the evidence that it had to find that Petitioner was guilty beyond a reasonable doubt for ten separate acts, and the jury was polled after its verdict to reflect that the verdict was reached by each individual juror.

Accordingly, because the state court rested its decision to deny relief on an independent and adequate state ground, and Petitioner has failed to show cause or prejudice, this Court should not entertain the claim. *See also Davis v. United States*, 411 U.S. 233, 93 (1973) (finding defaulted an identical federal claim pursuant to Federal Rule of Criminal Procedure 12(b)(2)); *Francis v. Henderson*, 425 U.S. 536 (1976)

(extending *Davis* to state court decision finding a waiver to grand jury composition challenge because it was not made pre-trial as the state's rules required).

**B. Merits**

Although Ground Four was procedurally defaulted and the Court should not review the claim, for the purpose of a complete report and recommendation the Court will also address why no relief can be granted on the merits of Petitioner's claim. Petitioner's ground for relief is not exactly clear. The title contends that he was denied a unanimous verdict. If that was the lone contention, it is certainly clear that no relief could be granted because "a state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict[.]" *Schad v. Arizona*, 501 U.S. 624, 634 n. 5 (1991) (citing *Johnson v. Louisiana*, 406 U.S. 356, 359–62 (1972)). And, as the habeas statute and the Supreme Court have made clear, it is "only noncompliance with *federal* law [that] renders a State's criminal judgment susceptible to collateral attack in federal courts." *Wilson v. Corcoran*, 131 S.Ct. 13, 16 (2010) (per curiam) (emphasis in original). Because Petitioner does not have a federal Constitutional right to a unanimous jury verdict, he cannot show that the state court's resolution of this claim was contrary to or an unreasonable application of "clearly established" Supreme Court precedent. 28 U.S.C. § 2254(d).

That is not the end of it, however, because the reasoning behind Petitioner's unanimous verdict challenge is that the indictment was flawed because each count alleges a single sexual act without differentiating which act is charged—there were no dates and locations in the counts, only that each count occurred in 2001. That, too, however, does not rise to a constitutional question cognizable in habeas review. It has long been held that "the sufficiency of an indictment cannot be reviewed in habeas corpus proceedings." *Knewel v. Egan*, 268 U.S. 442, 446 (1925). In fact, the Fifth Amendment requirement of an indictment by a grand jury has never been extended to the states. *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1973) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the

11

States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury.") It then follows that because there is no federal constitutional requirement that a state proceed on criminal charges by way of indictment, then there can be no constitutional challenge to the sufficiency of the indictment itself.[3] What is required of a state indictment turns purely on an interpretation of state law, as evidenced by the West Virginia Supreme Court's lengthy discussion on the state statutory requirements of an indictment, and that Court's interpretation of those statutes.

The only challenge to the way a state charges a criminal defendant, grounded in the notions of due process, can be whether Petitioner received adequate notice of the charges he was facing in order to present an adequate defense to those charges. *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *Hartman v. Lee*, 283 F.3d 190, 195 n. 5 (4th Cir.2002), *cert. denied*, 537 U.S. 1114 (2003). The West Virginia Supreme Court found, with regard to the notice provided, that

> [Petitioner] knew the elements of the offenses with which he was charged and had fair notice of what he had to defend against (particularly given his confession and the victim's pretrial statements to law enforcement in which she described the sexual abuse perpetrated upon her by Petitioner). The indictment also gave Petitioner proper notice by identifying the victim, the offenses committed, and the year the offenses were committed.

It is clearly established federal law that "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised

---

3 Much ado was made in the prior proceedings in this habeas action regarding the United States Supreme Court's decision in *Russell v. United States*, 369 U.S. 749 (1962). In fact, the undersigned initially recommended a partial grant of the writ based upon the Sixth Circuit Court of Appeals' decision in *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), which granted a writ in a similar case based upon its interpretation of *Russell*. However, it is clear to the undersigned now that reliance on *Valentine* was misplaced because federal habeas review of a state court judgment only looks to clearly established law as determined by the United States Supreme Court. *See* Renico v. Lett, 559 U.S. 766 (2010). It is equally clear that *Russell* is inapposite to the constitutional questions presented in the instant petition. In *Russell*, the Supreme Court delineated the requirements for a federal indictment, which answered the questions presented on direct appeal from federal convictions for refusing to answer congressional subcommittee questions in the D.C. Circuit. However, as discussed, there is no federal constitutional right to a state indictment. Thus, the sufficiency of a federal indictment can have no bearing on what is required of a state indictment, which the federal constitution itself does not require. *See Alexander, supra.* And, although the *Russell* Court briefly mentioned the Sixth Amendment right to notice of the charges which a Defendant stands accused, it touches the contours of that right in one sentence. Thus, as was reliance on a Sixth Circuit case misplaced, so, too, was sole reliance on *Russell*.

12

by the charged . . . are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole*, 333 U.S. at 201. Adequate notice is that which allows a defendant "to identify the issues on which a decision may turn." *Lankford v. Idaho*, 500 U.S. 110, 126 n. 22 (1991); *see also In re Oliver*, 333 U.S. 257, 273 (1948) (holding that due process requires that a person be given "reasonable notice of a charge against him, and an opportunity to be heard in his defense . . . to examine the witnesses against him, to offer testimony, and to be represented by counsel").

Petitioner cannot show that the West Virginia Supreme Court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Harrington*, 131 S. Ct. at 787. In fact, it is clear that Petitioner was apprised of the "issues on which a decision may turn." *Cole*, 333 U.S. at 201. In its simplest form, the indictment told Petitioner that he was being charged with sexually touching his stepdaughter on ten separate occasions in 2001. It is further clear that Petitioner understood these accusations because counsel vigorously cross examined the victim to put before the jury the instances she could remember explicit details about, and the ones she more generally just remembered that they happened.

With regard to Petitioner's final contention that he could not plead double jeopardy as a defense to further prosecution, the West Virginia Supreme Court found that "[i]f the State of West Virginia were to charge [Petitioner] with similar crimes against this victim and allege that the crimes occurred in 2001, there is nothing that would prevent [Petitioner] from asserting double jeopardy in connection with these later charged, similar offenses." *Ballard*, 739 S.E.2d at 652 n.24. This Court cannot find that this is contrary to, or an unreasonable application, of clearly established federal law as determined by the Supreme Court. Clearly if the state seeks charges in the future for acts that occurred during 2001, then Petitioner could raise double jeopardy as a bar to those prosecutions. Thus, this argument is premature because Petitioner has not been placed in double jeopardy. Nor is the indictment so vague as to preclude

13

Petitioner from raising the instant conviction to bar future prosecution. Accordingly, because there is no federal constitutional right to a unanimous verdict or indictment, and because the West Virginia Supreme Court did not unreasonably apply clearly established federal law regarding the due process required of a charging instrument, then no habeas relief can be granted.

## *IV. CONCLUSION & RECOMMENDATION*

The West Virginia Supreme Court of Appeals, as the last state court to address Petitioner's claim, held that the claim was procedurally defaulted because he did not bring a challenge to the indictment prior to trial as required by the West Virginia Rules of Criminal Procedure. This is an adequate and independent state ground which bars this Court from hearing the claim. Moreover, in addressing the merits of Petitioner's claim, the West Virginia Supreme Court did not come to a conclusion that was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Accordingly, the undersigned **RECOMMENDS** that Petitioner's motion for summary judgment on Ground Four be **DENIED**, Respondent's motion for summary judgment on Ground Four be **GRANTED,** and that the petition for writ of habeas corpus be **DENIED** and stricken from the active docket of this Court.

Any party may, within fourteen [14] days of the filing of this recommendation, file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge of record. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to Plaintiff, and transmit

14

a copy to all counsel of record.

Dated: August 13, 2013                         /s/ James E. Seibert
                                               JAMES E. SEIBERT
                                               UNITED STATES MAGISTRATE JUDGE